```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
C.C.S.com USA, Inc.,

                    Plaintiff,

        -against-                                    MEMORANDUM & ORDER
                                                     08-CV-4235(JS)(WDW)
ARTHUR GERHAUSER, Chief Building
Inspector of the Building Division of
the Town of Brookhaven, ROBERT
INCAGLIATO, Building Inspector of the
Town of Brookhaven, R. PALAZZOTTO,
Building Inspector of the Town of
Brookhaven, KATHLEEN MEADE, Deputy
Commissioner of the Building Division
of the Town of Brookhaven, the
BUILDING DEPARTMENT of the Town of
Brookhaven, the ZONING BOARD OF APPEALS
of the Town of Brookhaven, BRENDA A.
PRUSINOWSKI, Deputy Commissioner of
the Department of Planning,
Environment and Land Management of the
Town of Brookhaven, DAVID WOODS,
Commissioner of the Department of
Planning, Environment and Land
Management of the Town of Brookhaven,
the DEPARTMENT OF PLANNING,
ENVIRONMENT & LAND MANAGEMENT of the
Town of Brookhaven, and the TOWN OF
BROOKHAVEN,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      William D. Wexler, Esq.
                    816 Deer Park Avenue
                    North Babylon, NY 11703

For Defendants:     Jennifer H. Feldscher, Esq.
                    Peter J. Biging, Esq.
                    Lewis Brisbois Bisgard & Smith LLP
                    77 Water Street, Suite 2100
                    New York, NY 10005
```

SEYBERT, District Judge:

Plaintiff C.C.S.com USA, Inc. ("Plaintiff" or "CCS") sued Defendants, the Town of Brookhaven ("Brookhaven" or the "Town") and certain Brookhaven employees (together, "Defendants"), in a case arising out of Plaintiff's inability to obtain a building permit. Plaintiff and Defendants cross-moved for summary judgment (Docket Entries 32, 33); for the following reasons, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

## BACKGROUND

The salient facts are taken from the parties respective Local Civil Rule 56.1 Statements. Unless noted otherwise, they are undisputed.

In November 2001, CCS bought a parcel of land at 435 N. Sunrise Highway, East Patchogue, New York (the "Property") in November 2001. (See Def. 56.1 Stmt. ¶¶ 5, 9.) An "L"-shaped building (the "Building") sits on the Property. (Id. ¶ 7.) The long part of the "L" is a rectangular 70' x 80' primary structure (the "Long Structure") and the short part of the "L" is a 24' x 39' annex (the "Annex"). (Id.) The Certificate of Occupancy for the Building, which was issued in 1966, describes the Building's dimensions as 70' x 80'. (Id. ¶ 13.) The building permit issued in connection with the 1964 construction

of the Building also cited the Building's dimensions as 70' x 80'. (Id. ¶ 12.)

The Building was vacant when CCS bought it in November 2001. Over the years, the Property had been a health club and a restaurant. (Id. ¶¶ 10, 11.) In 1996, the Property's zoning was changed from commercial to residential, but the Building's pre-existing commercial use was permitted to continue after the change, except as provided by law. (Id. ¶ 11.) The health club and restaurant closed in early 2001 and, since that time, no commercial business has operated out of the Building. (Id. ¶¶ 10, 15-16.)

A fire broke out in the Building in July 2004. (Id. ¶ 19.) The fire caused extensive damage and the Building was subsequently left vacant and repeatedly vandalized. (Id. ¶ 20.) CCS made an insurance claim, which resulted in coverage litigation. (Id. ¶ 21.) During the course of that litigation, one of CCS's principals testified under oath that the Building had not been used for commercial purposes for at least two years prior to the fire. (Id. ¶ 23.)

The coverage litigation settled in October 2005, and CCS received substantial insurance proceeds. (Id. ¶ 24.) In the fall of 2006, CCS hired a construction crew to repair the Building. (Id. ¶ 25.) The crew began working in November 2006,

before anyone had obtained a building permit from Brookhaven.[1] (Id. ¶¶ 26-27.) Brookhaven learned of the construction and issued a stop-work order on November 28, 2006. (Id. ¶ 28.)

In January 2007, CCS hired an "expediter" named Michelle Janlewicz to help obtain a building permit. (Id. ¶ 34.) She submitted a permit application on July 25, 2007 (id. ¶ 34) but was soon advised that there was a problem (id. ¶ 35). Specifically, Brookhaven informed Janlewicz that, from the town's point of view, there was no certificate of occupancy ("CO") for the Annex portion of the Building nor had a building permit ever been issued for that portion. (Id. ¶ 35.) This amounted to a building code violation and, pursuant to the code, Brookhaven could not issue a permit for property that had uncured violations. Brookhaven advised Janlewicz that, to the extent the Building's CO simply misstated the Building's true dimensions (i.e., by describing the Long Structure but not the Annex), she could seek a Letter of Correction ("LOC") to amend the CO. (Id. ¶ 37.) Brookhaven also told Janlewicz that there might be an issue as to whether the Building had lost its pre-existing commercial use. (Id. ¶ 39.)[2] There is no dispute that

---

[1] Plaintiff maintains that a Town employee initially told Plaintiff that it did not need a permit to repair the roof.

[2] The parties dispute whether this last point was in the nature of a "heads-up" to Janlewicz (Defendants' view) or whether Brookhaven officials told Janlewicz that they could not issue a

4

Janlewicz had discussions with Town officials about how to resolve Plaintiff's issue. (Id. ¶ 37.)

Janlewicz applied for a LOC in January or February of 2008. The request sought to clarify that the Building's original CO applied to both the Long Structure and the Annex. (Id. ¶ 46.) Due to "an apparent clerical or administrative error," Brookhaven did not act on the LOC request for approximately thirteen months. (Id. ¶ 52.) During the interim, no one from Plaintiff's camp followed up on the request, and CCS did not pursue an Article 78 action to compel a response to the LOC request. (Id. ¶¶ 53-54.)

When Brookhaven finally considered the LOC request, it refused to amend the Building's CO because two Brookhaven building inspectors examined the building and concluded that the Long Structure and the Annex were constructed differently. (See id. ¶ 56.) In Brookhaven's view, this showed that the two portions of the Building were built at different times. (See id.) Brookhaven denied CCS's request for an LOC on February 23, 2009. (Id. ¶ 57.) At the time, Brookhaven indicated that it would reconsider the issue if CCS provided additional evidence. (Id. ¶ 58.)

---

building permit in part because of the dispute over the pre-existing use (Plaintiff's view). (See Pl. 56.1 Cntr-Stmt. ¶ 41.) As noted below, Plaintiff appears to have abandoned its position and instead emphasizes that the permit was denied due to the erroneous dimensions stated on the CO.

5

In May 2010, CCS sent Brookhaven U.S. Geological Survey aerial photos of the Property that were taken on March 29, 1966. (Id. ¶ 59.) CCS also submitted the expert report of Thomas Cramer, who examined the Building and opined that the Long Structure and Annex were built at the same time. (Id. ¶ 61; see Pl. 56.1 Cntr-Stmt. ¶ 60.) On June 18, 2011, based on this new evidence, Brookhaven amended the CO to read "93.1' x 80' irregular." (Def. 56.1 Stmt. ¶ 62.) Since June 18, 2010, CCS has not applied for a building permit. (Id. ¶ 63.)

It is undisputed that Defendants refused to give CCS a building permit because they believed--based on the original CO that--the Annex was an illegal addition to the Building. It is also undisputed that Defendants did not afford CCS notice or an opportunity to be heard before they refused to issue the permit.

## DISCUSSION

The thrust of CCS's case is that Defendants violated its due process rights when, without a pre-deprivation hearing, they effectively revoked Plaintiff's CO by refusing to issue a building permit based on Defendants' understanding that the CO did not apply to the Annex. CCS asserts a claim under Section 1983 of Title 42 of the United States Code ("Section 1983") for damages, a claim under Section 1988 of Title 42 of the United States Code for attorneys' fees, and claims for the following equitable relief: (1) a declaration that the 1966 CO is valid;

6

(2) an order releasing the stop-work order; (3) an order enjoining Defendants from refusing to issue CCS a building permit; (4) a declaration that Defendants have an obligation to provide pre-deprivation due process hearings; and (5) a declaration that CCS may use the Property as an athletic club. (Compl. ¶¶ 51-53; see also Pl. 56.1 Cntr-Stmt. ¶ 63.)

I. Summary Judgment Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests

with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 257, 106 S. Ct. 2505, 2514-15, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

II. Analysis

Plaintiff premises its Section 1983 claim on an alleged denial of its procedural due process rights guaranteed by the Fourteenth Amendment. To prevail on its claim, Plaintiff must show that it (1) had a "protected liberty or property interest" and (2) was "deprived of that interest without due process." McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001). Due process is notice and an opportunity to be heard. See id. at 288-89. The nature of the due process varies according to the nature of the protected liberty or property interest at issue. See id.

Defendants identify two theories to Plaintiff's case: that Defendants (1) denied Plaintiff a building permit (or effectively revoked Plaintiff's CO, depending on your perspective), and (2) wrongfully declared that Plaintiff had abandoned its preexisting commercial use. Although they may be related, the Court will treat each theory separately. From its papers, it is clear that Plaintiff's position is that Defendants denied its permit application based on the erroneous dimensions in the original CO. (See Pl. Br. 4-5; Pl. Reply 4)[3] Plaintiff appears not to advance an argument that the abandonment issue was a basis for the permit denial, and the Court will address that issue only briefly, below.

A. Defendants Effectively Revoked Plaintiff's CO

To reiterate, to prevail on a procedural due process claim, a plaintiff must establish that it had a constitutionally-protected property or liberty interest and that it was deprived of that interest without due process of law. The Court addresses each of these requirements in turn.

1. Plaintiff was Deprived of a Property Interest

As hinted at above, the parties frame this case differently. Defendants argue that Plaintiff was denied a building permit--nothing more--and that its due process claim

---

[3] Plaintiff did not include page numbers on its papers, so the Court's citations refer to the ECF page numbers.

fails because it did not have a property interest in a yet-to-be-issued permit. (Def. Br. 11.) Plaintiff, on the other hand, argues that by denying a permit because of a code violation premised on the supposedly-illegal Annex (and because that determination was in turn premised on the dimensions stated in the CO), Defendants effectively revoked Plaintiff's CO. (Pl. Br. 7.) As discussed immediately below, the Court is receptive to Plaintiff's theory of the case but, as will be clear later on, Plaintiff is not entitled to relief.

The Court begins with the proposition that Plaintiff had a property interest in the 1966 CO. For the purposes of a due process analysis, whether a plaintiff has a protected property interest is a question of state law. See Frooks v. Town of Cortlandt, 997 F. Supp. 438, 449-50 (S.D.N.Y. 1998) aff'd, 182 F.3d 899 (2nd Cir. 1999) (table decision). "Under New York law, a vested right in a certificate of occupancy may arise where a landowner demonstrates a commitment to the purpose for which the [certificate] was granted by effecting substantial changes and incurring substantial expense to further the development." Frooks, 997 F. Supp. at 450 (internal quotation marks omitted, alteration in original). "The landowner's reliance on the certificate must have been so substantial that the municipal action results in serious loss rendering the improvements essentially valueless." Id. at 451 (internal

quotation marks omitted). See also Ceja v. Vacca, No. 11-CV-1660, 2011 WL 6097143, at *5 (S.D.N.Y. Dec. 7, 2011). It is fair to say that, in this case, Plaintiff satisfies this test because (a) it bought the Property, therefore incurring substantial expense, presumably in reliance of the CO and (b) Defendants' actions rendered Plaintiff's investment nearly valueless by preventing Plaintiff from obtaining a building permit to repair the Building's fire-damaged roof. See also generally Zahra v. Town of Southold, 48 F.3d 674, 681 (2d Cir. 1995) (noting in dicta that a landowner may, in some circumstances, have a vested right in a certificate of occupancy).

If Plaintiff had a protected interest in the CO, Defendants' stance that nothing happened to the CO when they denied the building permit is somewhat disingenuous. Defendants take two conflicting positions. In one, they assert that "[n]othing was done to the C.O." (Def. Br. 10 (emphasis in original).) But in the other, they maintain that, pursuant to the Town Code, "a building permit could not be granted until what appeared from the Town records to be an illegal addition was proven to actually be legal or was made legal." (Def. Reply 8 (emphasis in original).) This sounds like an attempt to shift the burden of proving the CO's validity on Plaintiff. And, because Plaintiff already had a CO when it applied for the

11

permit, Defendants' requiring Plaintiff to prove the CO's validity before it issued the permit was tantamount to revoking the CO.[4]

Even if the Court disagreed with Plaintiff that the CO was effectively revoked, it would reject Defendants' position that Plaintiff's due process claim fails because it did not have a property interest in the building permit itself. An applicant does not have a constitutionally-protected interest in a building permit unless it has "a clear entitlement to the approval sought from the government official or administrative body." Walz v. Town of Smithtown, 46 F.3d 162, 167-68 (2d Cir. 1995). A legitimate claim of entitlement "exists where, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" Id. at 168 (quoting Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985)). "This test focuses on the amount of discretion committed to the issuing authority, not the estimated probability that the authority would act favorably in a particular case." Id. An entitlement arises where "the discretion of the issuing agency is so narrowly circumscribed

---

[4] Defendants' own arguments even suggest this conclusion. They argue that Plaintiff was not denied due process because, after the permit was denied, Plaintiff could have sought a Letter of Correction to correct the CO. (Def. Br. 11.) But why would Plaintiff need to "correct" the CO unless there had been some official determination, explicit or implicit, that the CO was no longer valid?

that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised. RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989). "The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." Id.

Here, the Brookhaven Town Code (the "Town Code") provides in relevant part:

> No permit for the erection, repair, remodeling, altering or moving of a structure, building or portion thereof shall be issued if such building or structure has previously been condemned or has violations of this chapter . . . unless it has been determined by the Chief Building Inspector or his authorized designee that such condemnation has been rescinded or such violations have been corrected. No permit shall be issued if prior approval of another government agency is required unless the applicant has demonstrated said approvals have been obtained and remain valid.

Def. Ex. J, Brookhaven Town Code § 16-3(M) ("Code Section 16-3(M)".) Citing this provision, Defendants argue that their building inspectors were authorized to deny CCS a building permit. (Def. Br. 13.) Indeed, Defendants maintain that they were required to deny CCS a permit because CCS' CO appeared invalid and this constituted a "violation" as contemplated by Code Section 16-3(M). (Id.) The Court is not convinced that

13

Code Section 16-3(M) vested Defendants with discretion to refuse to issue a building permit when presented with a proper permit application. See Walz, 46 F.3d at 168. For one thing, the Town Code provides that, in circumstances not applicable here, a building inspector may deny a permit where, "in his judgment, the proposed new location of the buildings would seriously increase the fire hazard of the surrounding buildings." (Def. Ex. J, Brookhaven Town Code § 16-3(F) (emphasis added).) There is no reference to the building inspector's "judgment" in Town Code Section 16-3(M), however, and that provision may be read as requiring the Town to issue permits to applicants who satisfy a series of objective criteria, i.e., an absence of code violations. See Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 379 (E.D.N.Y. 2001) (denying motion to dismiss where "the Town Code indicates that if the application meets all relevant regulations and ordinances, then the Building Inspector shall approve the application and issue the permit"); see also, e.g., Osborne v. Fernandez, No. 06-CV-4127, 2009 WL 884697, at *34 (S.D.N.Y. Mar. 31, 2009) aff'd, 414 F. App'x 350 (2d Cir. 2011) (noting that due process standard is whether official is required to issue a permit "upon ascertainment that certain objectively ascertainable criteria have been met" (quotation marks omitted)). For another thing, Defendants' cases on this point are largely beside the point. In Massa v. Kingston, 235

A.D.2d 947, 950, 652 N.Y.S.2d 857 (3d Dep't 1997), for example, the court simply stated--without analyzing the applicable municipal code--that a building inspector's decision to issue a building permit is discretionary and therefore entitled to deference in an Article 78 proceeding. In Gagliardi v. Village of Pawling, 18 F.3d 188, 193 & n.3 (2d Cir. 1994), the Second Circuit concluded that a municipality had discretion to grant or deny building permits, site plans, and variances, but only after considering municipal code provisions providing that an inspector "may" deny a permit where the proposed construction is not in conformance with all local ordinances and that proposed site plans must take into account the public's health, safety, and welfare. See also PRI Realty Corp., 870 F.2d at 919 (finding decision-maker had discretion where village code conferred "duty of exercising sound judgment").

In sum, the Court is sympathetic to Plaintiff's view of this case. It need not definitively resolve the issue, though, because it concludes that even if Plaintiff was deprived of a property right, it was provided with constitutionally adequate due process.

2. Was Plaintiff Afforded Due Process?

Assuming that Plaintiff was deprived of a property right, the next issue is whether Defendants provided Plaintiff with adequate due process. In Mathews v. Eldridge, the Supreme

15

Court outlined the three-factor analysis courts should undertake in determining the nature of the due process protections required in a particular case. 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976). Courts should consider: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. The Supreme Court has held that, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking . . . Conversely, in situations where a pre-deprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." Id. (quoting Zinermon v. Burch, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

In general, the Constitution requires some type of opportunity to be heard <u>before</u> the State deprives a person of

liberty or property. New Windsor Vol. Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 115 (2d Cir. 2006) (quoting Zinermon, 494 U.S. at 127) (emphasis in Zinermon). Plaintiff asserts that it was entitled to a hearing before its permit application was denied. (Compl. ¶ 40.) But the requirements are not always so onerous. See Manza v. Newhard, 2012 WL 917286, at *2 (2d Cir. Mar. 20, 2012). As the Supreme Court has noted, "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances." Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1 n.17, 16, 98 S. Ct. 1554, 1564, 56 L. Ed. 2d 30 (1978).

Having considered the Eldridge factors and the facts of this case, the Court concludes that Defendants satisfied their pre-deprivation due process obligations by affording Plaintiff an informal opportunity to discuss the CO issue with the Defendants' Chief Building Inspector. A full, formal pre-deprivation hearing was not necessary. Although Plaintiff had a significant interest in the continuing validity of the CO (the first Eldridge factor), see Norton, 239 F. Supp. 2d at 273, and Defendants' actions created some risk of an erroneous deprivation (the second factor), see id., requiring a full hearing in this situation would burden Brookhaven in a way that is out of proportion with the property interest at stake (the

17

third factor). Here, it is significant that the CO was only impacted once Defendants denied the permit application and that the denial was essentially without prejudice. In other words, Plaintiff could have returned the next day with aerial photos or other evidence demonstrating the CO's validity and obtain the permit they sought. Weighing Defendants' function in this case--*i.e.*, granting a building permit or denying one without prejudice--against Plaintiff's interest--*i.e.*, a CO that would enable it to obtain a building permit--the Court is convinced that informal discussions with a Brookhaven decision-maker sufficed to protect Plaintiff's rights at the pre-deprivation stage. *See* *Eldridge*, 424 U.S. at 335 (noting that the governmental function involved in the challenged deprivation is a factor to be considered in evaluating what due process protections are required); *see* *also*, *e.g.*, *Ceja v. Vacca*, No. 11-CV-1660, 2011 WL 6097143, at *3 (S.D.N.Y. Dec. 7, 2011) (noting that courts decline to extend "talismanic significance" to pre-deprivation hearings).

Plaintiff also had sufficient post-deprivation opportunities to be heard. Although it is undisputed that Defendants did not act on Plaintiff's Letter of Correction application for more than a year, it is also undisputed that Plaintiff did not pursue other avenues of review, including an a state court Article 78 proceeding, (Def. 56.1 Stmt. ¶ 45). It

has been widely held that Article 78 affords meaningful and constitutionally-adequate post-deprivation due process. E.g., Manza v. Newhard, 2012 WL 917286, at *2 (2d Cir. Mar. 20, 2012) (noting that Article 78 provided plaintiff with adequate post-deprivation due process); Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); see also HANAC, 101 F.3d at 881; Hampton Bays, 127 F. Supp. 2d at 381 (E.D.N.Y. 2001) (availability of Article 78 proceeding precluded procedural due process claim arising from denial of building permit).

Accordingly, the Court concludes that, even assuming it had a protected property right in the ongoing validity of its CO, Plaintiff was not deprived of that interest without due process. The Court also notes that Plaintiff no longer maintains that Defendants wrongfully declared that Plaintiff abandoned its existing non-conforming commercial use. Were this still a live issue in this case, the Court agrees with Defendants that Plaintiff was not deprived of a protected right because they never made a formal determination of abandonment. Cf. Norton, 239 F. Supp. 2d at 272 (plaintiff was deprived of right to non-conforming use when town issued a new CO that noted that plaintiff had lost non-conforming use).

19

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 30, 2012
        Central Islip, New York